AMOS A. WILLIAMS
vs.
THE SAVAGE MANUFACTURING
COMPANY.
}  March Term, 1851.

[CHANCERY PRACTICE—AMENDMENT OF ANSWER—PRODUCTION OF BOOKS AND PAPERS—MERGER OF STOCK.]

As a general rule, a special case must be shown before the Court will allow a defendant to amend his answer.

Amendments will be allowed where new matter has come to the knowledge of defendant since his answer was filed, or in case of surprise, or mistake, or where an addition has been made to the draft of the answer after the defendant has perused it, and in some other special cases.

This unwillingness of the Courts to permit a defendant to change, or add to the grounds of defence set up in the first answer, is increased when the application is made after the opinion of the Court and the testimony have indicated how it may be modified to accomplish his purpose.

An order granting the complainant the right to surcharge and falsify an account, was appealed from, and the Court of Appeals remanded the cause, under the Act of 1832, ch. 302, for the purpose of amending the pleadings and taking further testimony, and for further proceedings, and extended the right to surcharge and falsify to both parties, provided defendant, by

amendment of his pleadings, placed himself in such an attitude as to warrant such extension.    HELD—

That under this decision the defendant could amend his answer, so as to surcharge and falsify in respect to matters known to him at the time of filing his original answer.

The power to compel the production of books and papers, clearly belongs to this Court, but should be exercised with caution, and the party invoking it must designate, with a reasonable degree of certainty, the books and papers required, and the facts expected to be proved by them.

The application for the production of books stated, " that if they had been kept with any regard to good faith and accuracy, they must contain evidence pertinent to the issues in the cause." No particular books were designated, and no facts expected to be proved by them stated.    HELD—

That it would be an inconvenient and unjustifiable expansion of the rule upon such an application as this, to order all the books of a corporation to be brought into Court.

It is competent to this Court, after an account has been stated by the Auditor, in pursuance of directions, to review and reverse the decision, and to dismiss the bill, on more mature consideration.

But where an order of this Court has been appealed from, and the Appellate Court has remanded the cause for further proceedings, without reversing or affirming such order, but in the order so remanding the cause has expressed its distinct approbation of the order appealed from, no question adjudicated by that order is open for examination in this Court, except those in regard to which additional evidence has been introduced.

As a general rule, the parties must be limited to the items of surcharge and falsification specified in the pleadings ; this is indispensable, to prevent surprise.

Unless there is some provision in the charter to the contrary, a transfer of its own stock directly to a corporation, will operate as a merger of the stock so transferred.

But it does not follow that though the shares transferred to the corporation are merged for the time being, they may not be subsequently revived.

Where banks take their own stock in payment of, or in pledge to secure debts due them, it has always been the understanding and practice, that they were authorized to re-issue the stock whenever they thought fit to do so.

This Court has the power to order a re-transfer of stock, or the issuing of new shares, where justice between the parties require it, the amount of capital authorized by the charter not being exceeded by such issue.

If a deed is executed under suspicious circumstances, or is merely constructively fraudulent, this Court may, and should, permit it to stand as a security or indemnity to the grantee.

Equity, unlike a Court of law, which must pronounce one way or the other upon the validity of a deed, may adopt a milder course, and suffer it to stand, not as an absolute conveyance, but simply as a security for the sum really due.

In this case, a settlement between the complainant and the corporation was made, and stock of the Company transferred to the latter for the amount found to be due by the former. Upon a bill by complainant attacking this settlement it was decided, that it was not fraudulent in fact, and was allowed to stand, but leave was granted to surcharge and falsify the accounts upon which it was based, and they were accordingly corrected, and the amount due greatly reduced. HELD—

That the complainant has the right to demand the whole amount of stock transferred by him, upon his paying the amount really ascertained to be due from him, such transfer to stand merely as a security for the sum actually due.

[The first opinion of the Chancellor in this case, delivered on the 22d of November, 1848, is reported in 1st *Md. Ch. Decisions*, 306. The decree of the Chancellor accompanying the opinion was as follows:

"This case standing ready for hearing, and having been fully argued by the solicitors for the complainant and the defendant, the proceedings have been read and considered. And it appearing to the Chancellor, for the reasons stated, that the charge of fraud, in the settlement of the 1st of June, 1844, has not been sustained by the proof.

"It is thereupon adjudged and ordered, this 22d day of November, 1848, that the said settlement stand and be established. But it appearing further to the Chancellor, for the reasons also in that respect stated, that said settlement was founded upon accounts, which are erroneous in several particulars, both in the items of charge and credit; and that justice, and the principles which govern this Court, require that the complainant should have liberty to surcharge and falsify the same. It is thereupon further ordered, that the complainant have liberty so to surcharge and falsify said accounts in the particulars, and to the extent specified in the accompanying opinion of this Court. And this case is hereby referred to the Auditor, with directions to state and report the necessary accounts, from the pleadings and proofs now in the cause, and such further proofs as the parties may lay before him—the said accounts to conform in all respects to the principles, and to be confined within the limits prescribed in the said opinion of this Court."

Both parties appealed from this decree, and upon the hearing of the appeals, the Court of Appeals passed the following decree.

"These appeals, standing ready for hearing, were argued by the counsel for the parties. The proceedings have since been considered, and it appearing to this Court that the substantial merits of the cause will not be determined by the reversing or affirming of the decree of the Chancellor, and that the purposes of justice will be advanced by remanding the cause, it is thereupon, this 14th day of December, in the year 1850, by," &c., "adjudged and ordered, that the cause be remanded to the Court of Chancery, for the purpose of amending the pleadings, if deemed necessary by the parties, and that such further testimony be taken therein, and other proceedings had, under the Chancellor's direction, as shall be necessary for determining the cause upon its merits. This Court concurs with the Chancellor in the opinion and decision given by him, but inasmuch as his decision restricts the right to surcharge and falsify to the complainant alone, this Court modifies his opinion so far as to enlarge and extend that right to both parties, which it deems essential to the substantial merits of the cause, in the event of the defendant, by amendment of its pleadings, placing itself in such an attitude as will authorize the Chancellor to make such enlargement and extension."

After the cause was remanded to the Chancery Court under this decree, the defendant filed an amended answer, under an order of the Court of the 30th of March, 1851, granting leave therefor, pointing out and specifying at length various particulars in which the account upon which the settlement was based was erroneous. The complainant excepted to this answer, *first*, because it attempted to surcharge and falsify the account in many particulars, but does not aver and show that the matters, or any of them, therein charged, were recently discovered, or were not known to the defendant at the time of its filing its original answer, or at the original hearing of the cause. *Second*, because it attacks the credit in said account of $6,500, allowed complainant for salary from July, 1832, to

January, 1839, whereas his right to said credit has already been put in issue and decided by this Court and the Court of Appeals. *Third*, a similar objection to the attempt to impeach the credit of $1,033 33, for salary from 1st of January, 1839, to 6th of July, 1839. *Fourth*, a like objection to the attempt to impeach the credit of $1,128 96, for amount of dividend on complainant's stock. *Fifth*, because the answer seeks to impeach the right of the complainant to exclude from said account the charge of $1,350, for cash paid him by C. D. Williams, his right to do so having been already decided by this Court and the Court of Appeals. *Sixth*, a similar objection to the complainant's right to exclude the item of $5,402 55, alleged to be due on settlement of account with railroad. *Seventh*, because the answer insists that complainant is chargeable with all the money, materials, and labor expended and supplied for the construction of the furnaces, wheel and pattern house, cupola, bellows, gearing, coal house, &c., all which matters have already been adjudicated by this Court and the Court of Appeals. And as an additional exception, *eighth*, because the answer attempts to surcharge and falsify the account in many particulars, but hath not averred or charged that the matters, or any of them, were recently discovered, or were not known to defendant at the time of the settlement of June, 1844, which it is the object of this suit to avoid. At the hearing of these exceptions, on the 10th of May, 1851, the Chancellor delivered the following opinion.]

THE CHANCELLOR:

There can be no doubt that a special case must in general be shown before the Court will allow a defendant to amend his answer, and this for reasons too obvious to be stated. Amendments have been allowed where new matter has come to the knowledge of the defendant since his answer was filed, or in case of surprise or mistake, or where an addition has been made to the draft of the answer after the defendant has perused it, and in some other special cases, treated of in the books of practice, and in reported cases, 2 *Danl.'s Ch. Pr.*, 911, 912.

And this unwillingness on the part of the Courts to permit a defendant to change, or add to, the grounds of defence set up in the first answer, is certainly not diminished when the application is made after the opinion of the Court and the testimony have indicated how it may be modified to accomplish his purpose. *Calloway* vs. *Dobson*, 1 *Brock*, 119. Had the application, therefore, in this case been made to this Court after its judgment was pronounced upon the proofs and pleadings before it, at that time, and prior to the order of the Court of Appeals remanding the cause for further proceedings, it seems to me to be quite clear, that, according to the well-established practice of the Court, it would have been rejected, and consequently the first and the additional exception filed by the complainant to the amended answer in this case would have been sustained, as, in the order of the 3d of March last, giving leave to file an amended answer, in conformity with the order of the Court of Appeals, it was intended that the privilege should go no further than that order allowed, and that the amended answer, when filed, should be subject to exceptions if it transcended it.

In the opinion and order of this Court, of the 22d of November, 1848, the cause was referred to the Auditor, with directions to state an account, in conformity with the principles which, in my judgment, in the then condition of the cause, should govern it; and the complainant was given liberty to surcharge and falsify the settlement of the 1st of June, 1844, in several particulars specified in the opinion; but inasmuch as the defendant, standing upon that settlement as a compromise of conflicting claims, did not seek to surcharge and falsify, the order of this Court necessarily limited the right to the complainant, so that every error in the accounts upon which the settlement was made injurious to the defendant (if any such there be), could not be examined into or corrected. In this state of the cause an appeal was taken by the defendant to the Court of Appeals, which, at its December term last, passed an order remanding the record to this Court, under the provisions of the 6th section of the Act of 1832, ch. 302, without reversing or

affirming the order appealed from, upon the ground that the substantial merits of the cause would not thereby be determined, and that the purposes of justice rendered such course necessary; and the Court likewise in that respect exerting the authority conferred upon it by the Legislature, declared that it remanded the cause for the purpose of amending the pleadings, if deemed necessary by the parties, and that such further testimony be taken therein, and other proceedings had, under the Chancellor's direction, as should be necessary for determining the cause upon its merits.

The Court of Appeals further said in their order, that they concurred with the Chancellor in the opinion and decision given by him, but forasmuch as his decision restricted the right to surcharge and falsify to the complainant alone, they modified his opinion so far as to extend the right to both parties, which was deemed essential to the substantial justice of the case, in the event of the defendant, by amendment of its pleadings, placing itself in such an attitude as will authorize the Chancellor to make such enlargement and extension.

The Court of Appeals, then, in the exercise of the discretion conferred upon them by the Legislature, have thought fit to remand this cause to this Court, and in explicit terms have authorized the parties to amend the pleadings, if deemed necessary by them, and to take further testimony; and they have also made the right to surcharge and falsify reciprocal, deeming such course essential to the substantial merits of the cause, provided the defendant, by amendment, put itself in a condition to authorize the Chancellor to give that privilege to it.

The Court of Appeals have not said, nor upon any just construction of their order can they be understood to mean, that the defendant may amend its answer so as to place itself in a condition to surcharge and falsify the accounts, provided it shall be shown to the Chancellor that the matters, in respect of which it seeks so to surcharge and falsify, were recently discovered, or were not known to the defendant at the time of filing the original answer, or at the original hearing of the cause in this Court. On the contrary, it is most manifest from

the whole record, that the Appellate Court passed its order irrespective of any such consideration. It was from the record before them that they came to the conclusion that justice required that the privilege of impeaching the settlement should be mutual, and there was and could have been no pretence for saying that the facts contained in the record, upon which the Court of Appeals acted, were not known to the defendant when the original answer was filed, or when the cause was first heard in this Court. My opinion, therefore, is, that the exception on this ground cannot be supported.

The other exceptions maintain, that many of the particulars in respect of which the defendant proposes to surcharge and falsify the settlement were conclusively adjudicated by the former order of this Court, and as the Court of Appeals concurred in that order, and the reasons upon which it was passed, nothing settled by it is now open.

I have carefully read over the answer, and compared it with the former opinion and decision of this Court, and do not find it obnoxious to this objection. It does not propose to relitigate what has been already adjudged, though it does propose, in some instances, by counter charges, to show that sums which were allowed the complainant have been paid. It would be tedious, and indeed, pressed as I am at this time, it would be impossible to go in detail over the various points adjudicated by the Court, by the order of November, 1848, and specify particularly why I think the amended answer does not propose to retry or controvert them. But one or two points will be adverted to as examples.

The first error adjudged to exist in the account, was that the complainant was entitled to be credited with dividends upon the whole capital invested in the Savage Railroad Company, and this the defendant does not, and cannot now be allowed to dispute.

Second, that it was erroneous to charge the complainant with ten per cent. on the cash balances in this account ; and this, therefore, is no longer open to, nor does the amended answer propose to call it in question. Third, that the sum of

$1,350 was charged twice, when from the proof then before me, I was of opinion it should not have been charged at all. Now the judgment of the Court, in reference to this item, the answer does not controvert, that is, it does not deny that as the account then stood, it was twice debited to the complainant, when he was not liable at all.   But the opinion of the Court was expressly founded upon the case as it then stood, and the proof then in the record; and as leave was given, in the order referring the case to the Auditor, to take further proof, it would have been competent to the defendant to have offered further proof in support of this item of charge.   The opinion of the Court did not preclude either party from producing additional evidence in regard to this item, and as the complainant was not debarred from the right to offer evidence in support of his claim, to have stricken from the account the sum of $2,353 33, alleged to have been paid by him to Mr. Herbert, for land purchased from the latter, because he had not *then* satisfied the Court that the charge was erroneous, so neither should the defendant be denied the right to introduce evidence in support of a charge, which the evidence he had then produced did not establish.   The Court, with regard to the item of $1,350, had decided against the defendant, "upon the proof then before it."   And with regard to the sum of $2,353 33, the decision was against the plaintiff, because "he had not succeeded in satisfying the Court that the charge was erroneous."

Now surely if the complainant, notwithstanding this decision against him at that time, is at liberty to bring forward further proof in support of this charge, and his right to do so cannot be disputed, with what propriety can it be said the defendant shall not be equally favored with reference to the first-named sum, because the decision with regard to it was adverse to him upon the proof then in the record ?

With regard to the charge against the complainant, for moneys expended in erecting the furnace, the answer does not propose to open the question anew, the judgment of the Court

upon that subject is therefore considered as final.    These examples are deemed sufficient.

That this cause has not progressed as speedily as the complainant may desire, and that further delays may be encountered before it is brought to a final conclusion, may be a subject of regret.    But sitting here to administer the law according to my best judgment, I cannot permit these considerations to operate so as to take from the defendant rights and privileges which the Legislature, in its wisdom, and the Court of Appeals, in expounding the will of the Legislature, have secured to him. An order will be passed, overruling the exceptions.

—

[After the amended answer was filed, and the case was about to be sent to the Auditor for an account and further proof, an order was passed, on the 6th of September, 1851, by consent of parties, that defendant should bring into Court all its books of accounts, other than those of recent transactions, which are understood to be those opened or commenced on or about the year 1842, and that complainant have leave to inspect said excepted books at the counting-house of the town agent, at all reasonable times, and reserving liberty to him to apply for further orders in respect of said excepted books, if he shall be deterred or impeded in the exercise of his privilege of such examination, or if from other causes, such application shall be deemed necessary by him.    The books so ordered to be brought in, are all the books kept either in town or at the factory.

Under this order, the books prior to 1842 were brought into Court, and on the 29th of January, 1852, the complainant filed a petition, stating that he had been permitted from time to time to examine the excepted books kept by the town agent, but in so doing, he has been subjected to many and great annoyances, which tend much to thwart his purposes, and to delay this cause, and that he has been prevented from making any examination whatever into the books kept at the factory, although it was well understood at the date of said order, that he proposed to examine them, and that they would be brought to the office of the town agent, or some facility tendered him

for examining them at the factory. And though the agents of defendant had several times promised that said books should be laid before him, they had delayed to fulfil the same, and now require him to indicate the entries which he would examine, and the purposes to which he would apply his examination when made. That he has been so effectually excluded from the exercise of his ordinary rights as a stockholder, that he is unable to designate the books which it is necessary for him to inspect. He can only say, that if kept with any regard to good faith and accuracy, they must contain evidence pertinent to the issues in this cause, and his confidence that they do contain such evidence is increased by the anxiety evinced by the agents of defendant to exclude him from an examination thereof. That he does not believe that any inconvenience can result to defendant by the production of these books for the purpose of such examination, and he therefore prays that defendant be required forthwith to bring into Court all said excepted books, both those kept at the factory and by the town agent, also the book or books containing a list or an account of the bills and notes issued by or for said Company, and also the book or record of the proceedings of the Company.

Upon this petition, the Chancellor, on the same day (29th of January, 1852), passed an order, setting it down for hearing upon notice to defendant; and upon the hearing thereof, on the 17th of February, 1852, delivered the following opinion.]

THE CHANCELLOR:

The present application, which is brought before the Court upon the order of the 29th of January last, and upon which counsel have been heard, is not to enforce obedience to the order of the 6th of September, 1851, passed by consent of parties, and, therefore, I am not called upon to pronounce an opinion upon the scope and true intent and meaning of the last-mentioned order. It is understood, that the books of account, prior to the year, 1842, which alone were directed to be brought into Court, have been so brought in; and the application now is, that those opened or commenced since that

period, shall likewise be brought in, upon the ground, as stated in the petition filed on the 29th of January last, that the complainant, "though he has been permitted, from time to time, to examine those books, has been subjected to many annoyances which tend much to thwart his purposes and delay the cause;" and that with respect to the books, kept at the factory, he has been prevented from making any examination whatever.

The order of September last, reserves to the complainant liberty to apply for further orders, in respect of the books opened since 1842, if he shall be deterred or impeded in the exercise of his privilege of examination, or if from other causes such application shall be deemed necessary by him. And in virtue of the liberty so reserved, the present application is made. The defendant resists it upon several grounds, and among others, upon the ground that the complainant "has not specified in his petition, the books and papers he wants, nor the evidence that he expects to prove by them."

The petition of the complainant, after complaining that owing to his exclusion from the rights which pertain to him as a stockholder, he is unable to designate the books which are necessary for him to inspect, states, "He can only say, that if kept with any regard to good faith and accuracy, they must contain evidence pertinent to the issue in this cause." And this makes it necessary to inquire, whether under the law and practice of this Court, in reference to this subject, a sufficient foundation has been laid for an order to compel the defendant to bring in the books?

I do not deem it necessary to enter into an examination of the complainant's right, as a corporator, to inspect the books of the corporation; nor into the rights of partners, with regard to the partnership books, because the complainant and defendant are not partners; nor is he here in his capacity as a corporator, asking for a discovery of the general transactions of the corporation. This suit is brought for no such purpose, its object being to set aside a particular settlement made between the parties, and for leave to surcharge and falsify the accounts

upon which it was made; and by the judgment and order of this Court, approved by the Court of Appeals, the complainant has had permission to surcharge and falsify with respect to certain errors specified in his bill, and with respect to them alone. The complainant, therefore, stands before the Court precisely in the attitude of an ordinary suitor, and upon this application to compel the production of books and papers from the adversary, must show himself entitled upon the general practice and law regulating the subject.

In the case of *Williams and Bradford* vs. *Williams*, 1 *Md. Ch. Decisions*, 199, it was observed, that the power to compel parties to produce books and papers, though clearly belonging to the Court, was a power to be exercised with caution; and that the party invoking it "should, with a reasonable degree of certainty, designate the books and papers required, and the facts expected to be proved by them." And the cases referred to in the notes to 1 *Bland*, 90, and that of *Duvall* vs. *The Farmers' Bank*, 2 *Bland*, 686, were referred to, as showing this to be the rule.

Assuming this to be so, it appears to me, that the petition in this case is insufficient as the foundation of the order prayed. It not only does not designate the books called for, nor the facts expected to be proved by them; but the allegation, general as it is, that they contain evidence pertinent to the issue, is stated hypothetically, the allegation being "that if they have been kept with any regard to good faith and accuracy, they must contain evidence pertinent to the issues in the cause." But, as was said by Chancellor Hanson as far back as 1803, "in all cases, where books have been ordered to be produced, the particular books have been specified, and the Court has been first satisfied of the necessity of producing them." 1 *Bland*, 90. It appears to me, therefore, that it would be a most inconvenient and unjustifiable expansion of the rule, to apply it to a case like the present, and merely upon the suggestion, that possibly they may contain evidence material to the issue to order the books of a corporation to be brought into Court.

It is, therefore, ordered that the application be overruled, and that the petition of the complainant, filed on the 29th day of January, 1852, be, and the same is hereby dismissed, with costs to be taxed by the Register.

[Further proceedings were then had in the cause, and accounts were stated by the Auditor, to which exceptions were filed; at the hearing of which, the Chancellor, on the 22d of October, 1852, delivered the following opinion, wherein the nature of the exceptions and the facts of the case are fully stated.]

THE CHANCELLOR:

In the opinion of this Court, delivered on the 22d of November, 1848, and by the order of that date, several of the errors specified in the bill, and constituting the grounds of surcharge and falsification relied upon by the complainant, were adjudicated in his favor; and the opinion and judgment of this Court with respect to these errors, having been approved by the Court of Appeals, they must be regarded as settled, unless the proof taken since that order, should be considered sufficiently strong to warrant different conclusions.

The language of the Court of Appeals, in their order passed at December Term, 1850, is, that they "concur in the opinion and decision of the Chancellor;" but as his decision restricted the right to surcharge and falsify the account to the complainant alone, they modified his opinion so as to make the right to surcharge and falsify reciprocal, as essential to the substantial merits of the case, and leave was given to amend the proceedings accordingly.

The defendant has availed himself of this privilege, and much additional proof has been taken, bearing more or less upon some of the questions formerly decided, leaving others of them to rest upon the record, as it stood at the time that decision was made.

It was supposed, by the defendant's counsel, that the case of *Snowden* vs. *Dorsey*, 6 *H. & J.*, 114, and the numerous cases

affirming the principle, that it is competent to this Court, after an account has been stated by the Auditor, in pursuance of directions, to review and reverse the decision and to dismiss the bill on more mature consideration, justified a re-examination of every point settled by the order of November, 1848, and accordingly, almost every question has been re-argued. But, inasmuch as the Court of Appeals has expressed its distinct approbation of that order, this Court, should it now proceed to a reconsideration and reversal of it, would not be simply reconsidering and reversing its own judgment, but that of the Court of Appeals, a liberty which it is supposed this Court can hardly be warranted in taking. I therefore conclude, that no question, adjudicated by the order referred to, is open for examination, except those in regard to which additional evidence has been introduced.

And with these remarks, I proceed, as briefly as possible, but after a very careful examination of all the proceedings and evidence in the cause, had or brought in subsequently to the order of November, 1848, to express my opinion upon the questions, which, in my judgment, now remain to be decided; and, in doing this, I shall first take up the grounds of surcharge and falsification stated in the bill, and then those specified in the amended answer.

The first error alleged in the bill, in the account J. J., is the charge of $150 cash, advanced to the complainant, to pay his travelling expenses to Boston. This was alleged to be too much by fifty dollars, but it is now admitted that the charge is correct, and it must stand.

The second error has relation to the Railroad account. I have already expressed the opinion, that the complainant is entitled to be credited with the whole of whatever sum may be regarded as a proper compensation for the use of the Savage Railroad, and, as ten per cent. was the rate of compensation allowed in the account No. 2, stated by C. D. Williams, that rate was allowed on the whole cost of the road. The decision, that complainant is to be regarded as the sole proprietor of the road, and entitled to be credited with whatever may be

considered proper to be paid for its use by the Savage Company, must stand unchanged.   But, upon the subject of compensation, proof has been introduced, since the former argument, which, in my judgment, must affect the rate to be paid by the defendant for the use of the road.   In the first place, there does not appear to have been any contract between the parties in relation to it.   And in the next, it is shown, that the motive power and every expense attending the transportation upon the road, was paid and furnished by the defendant. Under these circumstances, I do not think it would be proper to allow ten per cent. upon the cost of the road for its use, and the point of difficulty is, what will be a fair rate ?   The best guide, I think, is the letter of Mr. George Williams, agent of the cotton factory, to L. Jarvis, President of the said Railroad Company, under date of the 1st of April, 1841. In that letter, he proposes, on the part of the cotton factory, to pay for that year, six per cent. on the cost of the road, and $100 in addition for repairs.   Now, in the absence of any contract for the residue of the period, during which the road was used by the defendant, I am persuaded no injustice will be done by adopting the terms of this letter, and applying them to the whole period, and that, therefore, is my judgment. With regard to the time when the road was first opened, and the use of it by the defendant commenced, I conclude, from the proof, that it was on the 1st of June, 1836, and without undertaking to decide upon the conflicting proof, as to the period of time down to which its use continued, my opinion is that, under the pleadings it must stop with the 1st of July, 1843.   In stating the account, interest at the rate of six per cent. should be allowed the defendant, on the cash advanced by it for the construction of the road, from the time of each advance respectively, and the annual sum to be paid by the defendant for its use, should be taken to be payable in equal semi-annual payments, and credited with interest accordingly, but no rests on either side should be allowed.

The next item of surcharge stated in the bill is the sum of $1,350, as for cash paid complainant by C. D. Williams, that

sum having been deposited with him by the Company.   It was
stated in the opinion first delivered by this Court, that this
sum had been twice charged to the complainant, and this is
now conceded by the defendant, and of course to that extent
the account J. J. must be corrected.   But the opinion of
November, 1848, declared further, that there should have been
no charge at all against the complainant in respect of this
sum.   And that now may be considered a question proper for
further consideration, additional proof bearing upon it having
been brought in since that opinion was made.   This item of
$1,350 is referred to in the 13th paragraph of the amended
answer, where it is alleged that this sum, on the 18th of
December, 1835, was withdrawn by the complainant from the
funds of the defendant, received by him or under his control,
and applied professedly to the payment of an alleged claim of a
manufacturing company in Boston, on account of patent rights,
and the answer insists that the said sum is a just and proper
debit against the complainant.   It appears by the receipt of
C. D. Williams, dated the 19th of September, 1828, that this
sum of $1,350 was placed in his hands, as a stakeholder, by
Dean Walker, who, together with the defendant, had been
carrying on a machine establishment, to answer for a claim
set up by the agent of one Patrick T. Jackson, on account of
certain patent rights.   The complainant was that agent, and,
on the 18th of December, 1835, as appears by an entry in the
day-book of the defendant of that date, he being at that time
the agent of the defendant, and at their factory, the sum in
question was paid him as agent of Jackson by himself as the
agent of the defendant.   The money then was paid by the
complainant to himself as the agent of Patrick T. Jackson,
who was the agent and treasurer of the Boston company, to
whom the patent right belonged.   The complainant received
the money in the capacity of agent, and in none other had he
any color of right to it.   But it now appears by the deposition
of Eben Hobbs, taken under a commission sent to Boston,
that the witness has been superintendent and agent of the
Boston Company for thirty-two years, and that no money was

ever paid to the latter Company by the complainant for patent rights, and that in fact the Boston Company had ceased to insist upon their patent rights from about the year 1825, and that they set up no claim whatever against the defendant. It is, therefore, quite clear, that if the complainant is permitted to retain this money, he will retain it without consideration, and without accountability to any one. That it does not *ex æquo et bono* belong to him is too apparent for dispute, and as the defendant has paid Dean Walker his half of the money, as is shown by his receipt of the 13th of March, 1845, the equity of defendant to call back the whole sum from the complainant, cannot, in my judgment, be resisted. This receipt, it is true, was in the record when the order of November, 1848, was passed, but the deposition of Mr. Hobbs was not, and it was thought that the mere act of paying Walker, without the concurrence of the complainant, could not render him liable to refund the money, to which, as agent of Jackson, he was or appeared to be entitled. I do not think that the report made by Mr. George Williams, to the proprietors of the Savage Manufacturing Company, under date the 15th of February, 1836, in which he speaks of this sum of money having been paid over to the agent by C. D. Williams, the stakeholder, in reduction of the liabilities of the Company, sufficient to countervail the positive proof that the party supposed to be entitled has not received and does not claim the money. That report was made only two months after the money was received by the complainant, and when, no doubt, it was supposed his principal was entitled to and claimed it. I do not propose to consider and decide the question of practice raised by the petition filed by the complainant on the 21st instant, and after the argument had commenced, placing my judgment upon the broad, and, as I think, impregnable ground, that upon principles of justice the complainant is bound to refund this money.

The next succeeding ground of complaint against the account specified in the bill is directed against the charge of $2,353 33, as paid in purchase of land from Herbert and Worthington.

The complainant first avers that of this sum $590 was advanced
and paid out of his own proper moneys, and, secondly, that the
lands were purchased by him as agent of the defendant, and
with its concurrence and approval.   Upon the former argu-
ment I was of opinion, and so said, that the complainant had
not succeeded in satisfying me that the charge in question was
erroneous, and reasons were given, the sufficiency of which
appears to me to be unshaken, why the complainant should not be
permitted at all events to strike the whole item from the account.
There can be no doubt that the defendant, by its charter, could
not have purchased and held these lands, and that, upon a proper
proceeding, the Company would have been divested of its title.
The presumption is therefore strong, that the use of the cor-
porate funds in the purchase was unauthorized, and the assent
of the stockholders thus to employ them, if obtained at all,
was not obtained in the regular way, and conferred no power
upon the complainant as agent to make the purchase.   The
lands, in point of fact, have not been conveyed to the corpora-
tion, the parcel bought of Worthington having been conveyed
to the complainant himself, and that purchased of Mr. Herbert
having been conveyed to Mr. Lansdale.   The sole question,
therefore, upon the bill is, whether the complainant shall be
charged with the whole sum of $2,353 33, or whether from
that sum is to be deducted the $590 which he alleges was paid
out of his own moneys ?   I have read the statement made by
Mr. Latrobe before the Auditor, and examined the pass-book
of the complainant with the Mechanics' Bank of Baltimore.
Mr. Latrobe proves that in February, 1839, the trustees of
Joseph Thornburgh's estate loaned the complainant the net
sum of $1,378 07, and by an entry in the book under date the
21st of March, 1839, and by a copy of a check found in the
printed record, dated on the same day, the complainant appears
to have paid Worthington $1,300.   This check, Mr. Worth-
ington proves at page 76 of the printed record, was given to
him for the first payment to be made on the land.   In view of
these facts, I am of opinion that the complainant did apply a
portion at least of the money he borrowed from Thornburgh's

trustees to the payment of this land. In his bill he has limited his claim on this account to the sum of $590, and to that amount he must be confined, but, in my judgment, this sum of $590 must be deducted from the amount charged against him in the account J J, and that the balance only of said sum shall stand as a charge against him.

In the former opinion it was said, that the complainant's salary could not be credited later than the 6th of July, 1839, and that it could not be allowed to exceed the sum of $1,000 a year, and in that respect no change is proposed now, or can be made.

Passing then from the items of surcharge and falsification specified in the bill, those insisted on in the amended answer remain to be considered.

1st. The first is, that of the $6,500 credited for salary in J J, from the 1st of July, 1832, to 1st of January, 1839, the sum of $3,500 being the whole amount due up to the 1st of January, 1836, was paid to the complainant by himself, acting in that behalf as agent of the defendant, and this is admitted by the complainant to be true. Of course the account in this respect is erroneous, and must be corrected.

2d. The second item of surcharge, which relates to the complainant's salary for the last six months, has already been disposed of.

3d. The third item of surcharge has reference to the credit of $1,128 96, for dividend on the defendant's stock, declared the 1st of October, 1839, which the amended answer alleges was paid, without, however, undertaking to say when or in what mode it was paid. I am not satisfied of the fact of the payment, and therefore this allegation of error in the account is not maintained.

4th. The fourth item is a mere allegation of general error in the account, as the result of omissions and errors, and need not be particularly noticed.

5th to 12th. The items from five to twelve, inclusive, relate to the interest which the answer alleges should be charged against the complainant on the several sums specified therein.

The account J J, was made up without charging interest on either side. In the course of the transactions upon which the account is founded, the balance may have shifted from time to time ; and in view of all the circumstances, and in the absence of any fixed rule of law giving interest as a matter of right, I am of opinion the claim cannot be supported, and it must be disallowed.

13th. The thirteenth ground of surcharge relied upon in the answer, has already been noticed and disposed of.

14th. This item of surcharge, which applies to the railroad account, has likewise been examined and disposed of in considering the second error specified in the bill, and nothing further need be said regarding it.

15th. This allegation in the amended answer, which charges the complainant with the receipt of moneys prior to the settlement of this account J J, for which it was said he had not in any manner accounted, is understood to be abandoned. The moneys thus alleged to have been received, and not accounted for by the complainant, are stated and enumerated in a paper marked Exhibit A A, No. 3, filed with the amended answer ; but, as appears by the report of the Auditor, this paper was sent to the defendant's solicitor for proof, and has not been returned, and no proof whatever has been offered in support of it. This item of surcharge, therefore, must be disregarded and rejected.

16th. The sixteenth item of surcharge in the amended answer has respect to certain orders, drawn by the complainant, which the defendant alleges were paid out of moneys or other means of the defendant, appertaining to defendant's store, and for which orders the complainant received credit, as if the sums for which they were drawn were paid by himself, but for which he gave no credit to the defendant. These orders, which are stated in the defendant's Exhibit A A, No. 4, amount in the aggregate to $5,624 32, commencing in the year 1836, and terminating in May, 1839. In examining this item it is very material to consider (indeed the fact bears with irresistible force upon the question), that it has not been shown, nor has

any attempt been made to show, that the complainant ever received a dollar of the money of the defendants with which he did not charge himself.    It appears from the evidence of John J. Tenain, taken before the Auditor, that the complainant, while acting as agent for the defendant, was in the habit, from time to time, of depositing cash at the store, and that it was likewise his habit to pay those having claims against the defendant by orders drawn by him upon the store, the moneys deposited being mingled with the proper funds of the store, and paid out indiscriminately with the money of the store, upon the complainant's orders.    And further, that the moneys thus deposited by the complainant in the store, were not on any of the books kept for its regular business.    And the evidence of Thomas C. Miller, in the printed record, pages 218 and 219, shows why it was that there was confusion in the cash accounts. The books certainly appear to me not to have been kept with as much accuracy as they should have been.    Balances have been forced, and entries made in the profit and loss account which it is not easy to explain ; but seeing that if the complainant is made to account for the amount of these orders as cash, that the defendant will get credit for more cash than it ever received from all sources, I cannot agree in the propriety of making the complainant so account.

These observations apply also to the eighteenth and nineteenth items of surcharge in the amended answer, and show that they cannot be maintained.

In coming to the conclusion that the complainant is not properly chargeable with the items of claim specified in the 16th, 18th, and 19th paragraphs of the amended answer, the letters of C. D. Williams to George Williams, dated in August and September, 1839, are certainly entitled to considerable weight. The complainant resigned his agency for the defendant on the 6th of July of that year, and was succeeded by the writer of these letters, and it must be presumed they were written after an examination of the accounts.    It will be seen upon reading them, that no such claims as are now preferred against the complainant were then made.    In that of the 21st of August, 1839,

the debts of the railroad, and the land he purchased some years before, were said to comprise the whole claim against him, or nearly so, whilst in that of the 10th of September following, his store account for the expense of his house, and the railroad account, it was said, would perhaps show everything. Now it is surely reasonable to suppose that if these large sums were due from the complainant, and ascertained to be so due from an inspection of the books, then in possession and subject to the examination of C. D. Williams, that they would have been claimed.

17th. In this item the defendant claims to recover from the complainant the sum of $808, paid to Hugh McEldery, on the 6th of July, 1840, as damages on a contract for lumber to be furnished by him to the defendant, for the erection of an additional cotton mill, upon a contract made with him by the complainant, acting in that behalf for and on account of the defendant, but without any authority for that purpose from the defendant, as the answer alleges. It appears by the deposition of Mr. McEldery, that the contract for this lumber was made in February, 1839, by the complainant with the witness, and that this contract, after the lumber was ready for delivery, was cancelled, at the urgent solicitation of George Williams, the town agent of the defendant, in consideration of the payment to the witness of the sum in question, which was in fact paid on the 6th of July, 1840. The complainant does not appear to have been consulted in regard to this compromise with Mr. McEldery. In fact, before the note was given for the payment of the amount agreed upon, the complainant had fallen into a condition of mental imbecility; and had ceased to be the agent of the defendant, the note being signed by his successor, Mr. C. D. Williams. The Auditor reports that it would seem the complainant was not justified in entering into this contract, and that he is properly chargeable with the sum paid. It is unquestionably a circumstance against the propriety of now charging the complainant with this money, that it does not appear, at the time of its payment, to have occurred to C. D.

Williams, the agent of the factory, or to Mr. George Williams, the town agent, that the complainant was so chargeable.

Mr. George Williams, according to the proof of McEldery, did not, when informed by the latter that the timber was nearly ready for delivery, question the obligation of the defendant to comply with the contract, by receiving and paying for it. On the contrary, he applied to the witness to release the defendant from the contract, and it was only on his urgent solicitation that the former consented to do so. And the agent at the factory, recognising the right of the town agent to make the compromise, gave his note, as agent, for the amount agreed upon, which note was duly paid out of the funds of the Company. Now, it appears to me, that if the contract between the complainant and McEldery for the lumber, could be considered as binding on the Company, as falling within the general scope of his authority as agent (as is assumed in the amended answer), it may with equal propriety be assumed, from the acts of the town and country agents subsequently, in settling the claim and paying the money, without the suggestion of a doubt regarding the authority of the complainant to make the contract, that he was authorized to make it. And especially may such authority be assumed, when we find, that only very recently has the claim to charge the complainant with the money so paid, been brought forward. But conceding, that the complainant, in making this contract with McEldery, though acting within the general sphere of his authority, was guilty of an abuse of power, which would have rendered him responsible for the damage resulting from it, how can it be maintained, that the defendant shall, by a compromise, made in the complainant's absence, and without his knowledge or concurrence, fix the amount of his liability? For these reasons, I think this ground of claim against the complainant must be rejected.

20th. This item of surcharge in the amended answer having been withdrawn, need not be noticed.

21st. In this paragraph of the answer, the defendant surcharges the account, by insisting that the complainant is

justly chargeable with the sum of $500, with interest thereon, from the 16th of August, 1839, paid to the Farmers' Bank of Maryland, in satisfaction of the note given to meet the subscription to stock in the Annapolis and Elk Ridge Railroad Company, and the propriety of so charging the complainant is not understood to be disputed, though it is urged, that the defendant, by the form in which he has presented the claim in his answer, has precluded himself from insisting on it. Having read this part of the answer with much care, the complainant's construction of it does not appear to be the true one. It appears to me, that the answer, in effect, charges the complainant with having obtained a double credit for the said sum of $500 in his cash account, whilst he charges himself but once with that sum, though he received it twice; first, upon the note discounted at the Bank, and secondly, upon Heigham's order on the Railroad Company. The Auditor reports, that the complainant is properly chargeable with this sum, and in this conclusion I concur.

22d. In this paragraph of the amended answer, the defendant insists, that complainant should be charged with various sums of money, paid away and expended by him, in connexion with the proposed establishment of a Bank, and for tavern bills, travelling expenses, and for newspapers, &c., not at all connected with the business of the Company, and for which the Company was in no wise bound or liable. And the answer exhibits two papers, marked A A, No. 5 and A A, No. 6, showing the amounts and dates of the sums so expended. And this part of the answer, furthermore, insists, that complainant is justly chargeable for house-rent, and for some other small matters, not particularly enumerated. The Auditor reports, that no evidence has been offered to show that the Company ever authorized any action in reference to the establishment of a Bank, and I have been unable to discover any; I am, therefore, of opinion, that the complainant should be charged with such sums of the funds of the defendant as he expended in the steps taken by him to establish the Bank, but I do not think he is chargeable with travelling expenses, news-

papers, &c., unless it appears, that those travelling expenses were incurred on account of the Bank.  In the Exhibit A A, No. 6, several sums appear to have been paid away by the complainant, on account of the Railroad, and with these, I think he is chargeable, as, for the purposes of this case, the complainant and the Railroad are one.  For the reasons, however, already stated, I do not think the complainant should be charged with interest on those sums.  The defendant has abandoned the claim on account of complainant's house, and I do not think the claim for house-rent can be maintained. In regard to this matter of rent, no want of authority can be urged, nor was a formal order of the corporation necessary, and the claim is now for the first time presented, though as far back as December, 1835, the complainant made the entry in his day-book, which is relied upon as furnishing grounds for the claim.  After this long acquiescence, it seems to me too late to make the charge.

23d.  Under this division of the amended answer, the attempt is renewed to charge the complainant with the sums expended in erecting the furnace and its appendages, and the charge has been pressed in the argument with much earnestness and force. As the case was presented by the record, upon the former hearing, it was not only the judgment of this Court, but that of the Court of Appeals also, that the complainant was not so chargeable, and, therefore, in the absence of new proof, it cannot, according to the views already expressed, be regarded as an open question.  But an additional deposition has been taken, that of Mr. Henry H. Williams, and this deposition, it is supposed, in connexion with the proof formerly in this cause, is sufficient to induce the Court to change the judgment heretofore expressed.  I do not, however, think so.  Much of the same description of evidence was before the Court when the order of November, 1848, was passed.  No doubt was then entertained, or is now entertained, of the veracity of the witnesses who deposed upon this subject, or of the truth of the facts to which they respectively deposed.  The evidence now derived from Mr. Williams can, then, only be regarded as

cumulative, and cannot have the effect to overcome the mass of proof upon which the judgment of the Court was founded, and upon which it came to the conclusion, that the expenditure on account of the furnace was to be regarded for all substantial purposes as a Company expenditure, and the furnace itself as Company property. . The judgment and order of the Court, therefore, upon this point, remain unchanged.

24th. No new evidence has been taken in regard to what would be a proper allowance to the complainant for entertaining the proprietors and others at the factory, and hence the former decision of this Court upon that subject must stand.

25th. It has already been said that the complainant is justly chargeable with the sum of $2,353 33, stated in account J J, as having been paid to Herbert and Worthington for land, after deducting therefrom the sum of $590, claimed in the bill to have been paid out of the complainant's own moneys. Upon this subject, the Auditor reports that it would seem that the defendant received from the land $327\frac{1}{2}$ cords of wood, after the purchase by Lansdale (being of Herbert's land), and he submits whether the complainant should not be credited with the value thereof, to be determined hereafter. And with regard to the land purchased from Worthington, the Auditor says it is in proof that on two several occasions rent was received for it and paid into the store, though it is denied that any agent of the Company was authorized to receive such rent, or to treat the land as the property of the defendant. It has been urged, as it seemed to me at the time, with great force, that as no claim on account of this wood, or for those rents, was asserted in the bill, that the complainant could not be credited in respect of either, but upon reflection, I have come to a different conclusion. The aim of the bill was to get rid entirely of this charge, upon the ground that the lands were purchased by the complainant as agent for the Company, with the concurrence and under the direction of stockholders owning more than a major part of the stock, and therefore no complaint was made, or could consistently be made, with respect to wood or rents taken and received by the defendant, from and for the use of

the lands.   But the judgment of the Court being against the complainant on this point, and it being determined that the purchase was not made for the Company, and that the complainant is chargeable with the money of the Company, applied by him towards paying for the lands, and the question being with what amount he should be so charged, justice seems to require that he shall be credited with any sums which the Company may have received from the same lands.   The right to the deduction on this account is presented defensively, and not by way of surcharge or falsification of the account, and it therefore appears to me that the complainant is entitled to set off against the charge, with respect to these lands, the value of the wood taken by the defendant, from them, and the rents which it may have received from the tenants.

That there is a great deal of complication and difficulty in this case, it is impossible to deny, and though the conclusions I have formed upon the various questions involved in it are the result of a very careful consideration, aided, as I have been, by full and able arguments, I am quite sensible of the probability that I may, upon many of them, have fallen into error.   Should this be so, the steps necessary for their correction will doubtless be taken by the aggrieved party.

The case will be sent to the Auditor, with directions to restate the accounts upon the principles, and according to the views hereinbefore expressed, and when this report comes in, the extent and character of the decree will be determined, due regard being had to the orders already passed in the cause.

———

[An order was passed accordingly, dated the 30th of October, 1852, and the Auditor having stated accounts in accordance therewith, exceptions were again filed thereto, at the hearing of which the Chancellor delivered the following opinion, on the 27th of January, 1853.]

———

THE CHANCELLOR:

This cause, standing ready for hearing upon exceptions to the report of the Auditor of the 12th of November last, and

being submitted, the counsel of the parties have been heard, and the proceedings read and considered.

That report, and the accounts accompanying it, purports to have been made in pursuance of the order of the 30th of October preceding, and as, in my opinion, it does conform therewith, and is supported by the evidence, it follows that the exceptions on both sides must be overruled, and the report confirmed.

The first exception of the complainant is to the charge against him of $500, in the account F, with interest thereon from the 16th of August, 1849, which in the exception is spoken of as a supposed payment in relation to Heigham. It is not deemed necessary again to go over and restate the grounds upon which, in the former opinion of this Court, the propriety of the charge in question is vindicated. The argument now is, that in the cash account in the agent's ledger, there stood a balance to the credit of cash of $562 39, and that consequently, even upon the hypothesis that the agent had improperly credited himself with the sum of $500, the correction should be made by erasing said entry, or by a neutralizing entry on the debtor side of the account, and that, adopting either mode, there could still remain due to the complainant on the cash account, a balance of $62 39. It is obvious, however, that this mode of getting rid of the charge, assumes the correctness of the entire cash account, which with the exception of the item of $500, was not put in issue. The defendant, by the amended answer, specifically charged that the complainant was responsible for this sum of $500, paid to the Farmers' Bank of Maryland under the circumstances therein detailed. The parties went to trial upon this specific allegation and none other. In no part of the pleadings was it pretended that this item of $500 should not be debited to the complainant, because there stood a cash balance to his credit of a larger amount. If such defence had been set up by the pleadings, the entire cash account of the complainant would have been open for examination, and it is of course impossible to say to what results such an examination would have led. It has been several times

said that, as a general rule, the parties must be limited to the items of surcharge and falsification specified in the pleadings. This is indispensable to prevent surprise, and it must be quite apparent that the defendant, by the pleadings in this cause, had no notice that an attempt would be made to extinguish this charge of $500, by showing in evidence that a larger cash balance stood on the ledger to the credit of the complainant. The first and second exceptions of the complainant, which are directed against this charge, cannot therefore be sustained, nor can the third exception, which complains of the charge for interest on the principal sum.

The claim for interest could not well be disputed, supposing the principal sum to be due, unless some equitable objection to its allowance could be presented. But the only objection is the existence of the cash balance on the agent's ledger. If, however, the cash account in the ledger could be looked to for the purpose of getting rid of the claim for interest, I can see no good reason why it might not be permitted to extinguish the principle also. It cannot, in my opinion, have any influence one way or the other. It is not involved in the pleadings, and must be disregarded altogether.

The defendant's first exception objects to the allowance to the complainant for the use of the Savage Railroad. In the former, as well as in the last opinion of this Court, the complainant has been treated as the sole proprietor of the railroad. Whatever was advanced or paid on account of that road was considered as advanced to and paid for him, and whatever was to be paid by the defendant for the use of the road was to be credited to him. It is said in this exception of the defendant, that the complainant's bill, and his Exhibit No. 4, recognises and admits that the defendant made certain payments to the stockholders of said Company, which should be deducted from the sum allowed the complainant for the use of the road. But these admissions and recognitions, such as they are, were in the record when the opinion and order of the 22d of November, 1848, was passed. By that opinion and order, the complainant was considered and adjudged to be the Railroad Company, and

entitled to be credited and liable to be charged accordingly. And upon appeal, the Court of Appeals say emphatically, that they " concur in the opinion and decision of the Chancellor." And in the last opinion of this Court, it is said, " the decision that the complainant is to be regarded in this cause as the sole proprietor of the road, and entitled to be credited with whatever may be considered proper to be paid for its use by the Savage Manufacturing Company, must stand unchanged."

When this cause was last before the Court, in view of the evidence introduced after the decision of 1848 was made, I deemed it proper to reduce the allowance from ten per cent. to six per cent. on its cost, to be paid by the Cotton Company for the use of the road, and $100 in addition, for repairs. The Auditor has stated the account in conformity with the last opinion, and consequently the exceptions of the defendant thereto must be overruled. In the second part of the third exception it is alleged that all the repairs needed by the road, during the period it was used by the defendant, were made and paid for by the defendant. There does not appear to me to be any evidence of this allegation.

The defendant's first exception to the account F, grows out of the exceptions to the account E, and has already been disposed of.

The second exception to the account F objects to the allowance of $119 98, received from Samuel Jackson for rent, upon the ground that the persons who received it had no authority on behalf of the defendant to give receipts, and because it has not been proved that said sum went, in point of fact, into the funds of the defendant. But the authority of these persons to give the receipts was adjudicated in the opinion of October last, and I agree with the Auditor, that the proof does show that the money was paid into the defendant's store, and consequently enured to the benefit of the defendant. The exceptions, therefore, will be overruled.

The only remaining question relates to the form of the decree. It appears by the proceedings that the settlement, which the bill impeaches, was made on the 1st of June, 1844. Ac-

cording to that settlement, the complainant appears to have been indebted to the defendant, on that day, in the sum of $7,685 98, and to this was added, under the circumstances which the record discloses, the sum of $1,936 34, whereby the amount was increased to $9,632 32; and on the same day it was agreed that this claim should be released, in consideration of a transfer by the complainant and his trustees to the defendant, of an amount of the complainant's stock in the Company representing said sum. The agreement, though dated the 1st of June, 1844, was not carried into effect until the 20th of the then ensuing July, the delay being caused by the necessity of procuring the signatures of the requisite number of shareholders, according to the requirements of the charter. But these being obtained, the complainant, together with his trustee, on the last-named day, did transfer to the defendant the requisite amount of stock; that is to say, an interest representing the sum of $9,632 32, and thus the agreement on both sides was consummated.

But it now appears, as the result of the accounts stated by the Auditor, under the directions of this Court (which accounts are to be confirmed), that the sum actually due from the complainant to the defendant, in June, 1844, instead of being $9,632 32, was only $4,764 06, and that consequently there has been an over-payment of $4,868 26, and the question is as to the character of the decree by which the complainant is to be redressed.

In his bill he alleges that the capital stock of the Company, which in the year 1839 amounted to $108,200, being reduced by the merger of $9,632 32 of the complainant's stock, was, after the transfer of that stock, brought down to $98,567 68, and the prayer is, that an account may be taken, under the direction of the Court, of the transactions specified in the bill; and if on said accounting any balance should be found due the complainant, payment thereof may be decreed, and a re-transfer of the stock awarded him, and if any balance is ascertained to be due from him to the Company, he may be declared en-

titled, on payment of said balance, to a re-transfer of his said stock, and for general relief.

The defendant, in answering that part of the bill which speaks of the merger and reduction of the capital stock of the Company, by the transfer to it of the complainant's stock, says the transfer "had the effect, by operation of law, to merge, extinguish, and annihilate so much of the capital stock of the respondent, and practically to reduce it from an amount of $108,206 83, at which it stood before the transfer, to the amount of $98,574 51, being a reduction to the extent of $9,632 32."

Both parties, therefore, speak of the transfer as effecting a merger of the stock transferred; but they differ in this, that the complainant insists, that the stock merged may be re-created, or resuscitated, by the decree of this Court, directing the defendant to make a re-transfer to the complainant. Whilst the defendant maintains, that the stock was absolutely annihilated by the transfer to the Company, the transfer enuring to the benefit not of the defendant in its corporate capacity, but to the benefit of the respective proprietors of shares in their natural capacities.

Before expressing an opinion upon the power of this Court to resuscitate this stock, or on the propriety of exerting the power, if it exists, it may be well to dispose of an objection, founded upon the order of the 22d of November, 1848, by which it is supposed this question was adjudicated.

In the opinion, and also in the introduction to the order, it was declared that the charge of fraud in fact, in procuring the settlement of the 1st of June, 1844, was not sustained by the proof. And it was thereupon ordered, "that said settlement should stand and be established;" but liberty was given to the complainant to surcharge and falsify the accounts, upon which the settlement was founded, in certain particulars therein speci-fied. The settlement of the 1st of June, 1844, by which the amount supposed to be due from the complainant to the defendant was ascertained, not being obnoxious to the imputation of fraud in fact, it was adjudged that it should stand until the

accounts upon which it was founded should, in the particulars specified, be investigated.  But it was not intended by the order to place the stock, by which the claim was paid, beyond the reach of recall, if in the further progress of the cause a decree to that effect should be necessary to meet the justice of the case.  If the settlement had been overthrown entirely, a general account would have been ordered, wholly irrespective of it, and every item on both sides of the account would have been exposed to investigation, and required to be sustained by proof.  But this was not done.  It was the opinion of the Court, that the settlement was not procured by fraud; but that, in certain respects, the accounts upon which it was based were erroneous, and therefore, that though the settlement should stand, in so far as it was not impeached, the plaintiff might show it to be wrong in the particulars and to the extent specified in the opinion of the Court.

In the argument of this cause in the Court of Appeals, upon an appeal from the order of November, 1848, the counsel for the complainant appear, by a statement of their points with which I have been furnished, to have objected to that part of the order which declared " the settlement should stand and be established," and to have insisted that the settlement should have been annulled and an immediate re-transfer of the stock decreed.  And this, it is argued, shows that in the opinion of the complainant's counsel the order settled the question in regard to the stock.  Such, however, is not my view of the point ; but conceding the counsel may so have understood the order, it certainly cannot be insisted that the Court is bound by such interpretation of it.

In passing the order referred to, this Court did not intend to adjudicate the question now presented.  It was not the design of that order to pass upon the form and character of the final decree, which should be passed in the cause when the accounts between the parties should be taken.  And I shall now, therefore, very briefly state my views upon this question.

Cases have been cited to show, that if the shares of an incorporated company are transferred to the corporation, they

merge and are extinguished.   In the case of *Ex parte Holmes*, 5 *Cowen*, 426, which involved the right of voting certain shares of stock in an incorporated company, which stood in the names of persons as trustees for the corporation, it was said by the Court, that the corporation may, from necessity, take their own stock in pledge, or payment, and that they may keep it outstanding in trustees to prevent its merger, and convert it to their security—implying, of course, that a transfer to the corporation itself would operate as a merger; and I presume, unless there is some provision in the charter to the contrary, that a transfer of its own stock directly to a corporation, would have that effect.

But it does not follow, that though the shares transferred to the corporation are merged for the time being, that they may not be subsequently revived. It is believed that but few of the banking institutions, in this State, are not authorized to take their own stock in payment of, or in pledge to secure debts due them; and whatever may be the temporary legal effect of the transfer, it has always been supposed, and the practice has been in conformity with such general understanding, that they were authorized to re-issue the stock whenever they thought fit to do so.   It never was the understanding, so far as I am informed, that such transfer of its own stock to a bank, had the effect to lessen its capital.   In the case of *Ex parte Holmes*, before referred to, the Court distinctly recognised the right of the company to take its own stock in pledge, or payment for debts due *it, a right*, they say, resulting from necessity; and it cannot well be doubted, that, having the right thus to take, they had the further right to sell and retransfer to realize the money due them.

But if it were conceded that the shares of the stock transferred by the complainant to the defendant, in 1834, were so entirely merged as to be incapable of resuscitation, there would be no difficulty in restoring to the complainant the number of shares originally standing in his name, if the justice of the case requires it.

By the Act of 1821, ch. 201, sec. 2, the capital stock of this

corporation was limited to $150,000, but by a supplement, passed in 1825, ch. 169, it was enlarged to $300,000, a sum far exceeding the actually subscribed capital now or ever existing. If, therefore, the shares of stock transferred by the complainant to the Company cannot be called back, why may not the defendant be required to issue new shares to the same amount, if that course should be deemed necessary to do justice between the parties ?    The amount of the capital would still be largely within the limits of the charter.    I can see no objection to this course, provided the circumstances of the present case call for that kind of relief.

Cases are abundant to show, that if a deed is executed under suspicious circumstances, or is merely constructively fraudulent, this Court may, and should, permit it to stand as a security and indemnity to the grantee.    It is not to be set aside absolutely, as would be done if found to be fraudulent in fact ; but this Court, unlike a Court of Law, which can take no middle course, and must pronounce one way or the other upon the validity of the deed, may adopt the milder and more equitable course, and suffer it to stand, not as an absolute conveyance, but simply as a security for the sum really due.

In this case it has been several times said, and is repeated, that there is no foundation whatever for the charge of fraud, in fact, against any of the parties to the transaction in question. But still, the judgment of the Court was, and that judgment has been approved by the Court of Appeals, that the settlement of June, 1844, by which the sum supposed to be due from the complainant to the defendant was ascertained, was, in the contemplation of a Court of Equity, constructively fraudulent, and there can be no doubt that the transfer of the complainant's stock to the defendant was made because—and only because—of that supposed indebtedness.    The agreement and transfer signed by the parties conclusively prove this.    A purchase and sale of this stock was not intended, but a transfer in payment of a supposed pre-existing debt.

Assuming that the Court has the power to direct a retransfer of this stock to the complainant, or to order new

shares to be issued to him for an equivalent amount, he has an undoubted equity, at least, to demand such re-transfer, or new issue for any excess beyond his actual indebtedness to the Company.   If instead of an equivalent in money, he calls for his stock, what justice can there be in denying him?   His claim to restitution to the extent of the excess seems to me to be unquestionable, and under the circumstances of the case, I think he has a right to demand the whole amount of stock transferred by him, upon his paying the amount really ascertained to be due from him.   In other words, that the transfer shall stand only as a security for the sum really due.

It will be borne in mind that one of the grounds upon which much stress was laid in directing the settlement to be corrected, was the feeble condition of the complainant's mental faculties, when the accounts upon which the settlement was based were presented to him.   In the judgment of the Court, he did not and could not understand them.   The same motive which induced the Court to look with an indulgent eye upon the acts and conduct of the complainant in regard to the settlement, cannot be without its influence when the transferring his stock, the result of the settlement, is under consideration.   They were contemporaneous acts, performed by a party whose intellect, to a great extent, had sunk before the force of physical disease, and therefore present a case in which it is the duty of the Court to do him full and complete justice, taking care always to do no injustice to the other side.   If the money actually due the defendant is paid, it is all it can be entitled to, and all, of course, it can reasonably ask for.

It is not, in my opinion, easy to draw a substantial distinction in principle between this case and the case of *Boyd* vs. *Dunlap*, 1 *Johns. Ch. Rep.*, 478, where it was held that though a deed fraudulent in fact is absolutely void, and is not permitted to stand as a security for any purpose of reimbursement or indemnity, yet it is otherwise with a deed obtained under suspicious circumstances, or which is only constructively fraudulent.   For, in that case, which was a bill filed by the creditors of the grantor to vacate a deed made by their debtor to his

son, the Court, though, refusing to set it aside absolutely as fraudulent in fact, ordered it to stand as security for the sum really due from the father to the son.

The opinion of Chancellor Kent in that case is not only supported by the authorities cited by him, but meets full confirmation in the case of *Wood* vs. *Abrey*, 3 *Madd.*, 216, where a deed made for an inadequate consideration by vendors who were in great distress, and without professional assistance, was set aside upon the plaintiff's repaying the amount of the purchase-money, and by what was said by the Master of the Rolls in *Daubeny* vs. *Cockburn*, 1 *Merivale*, 643, "that in ordinary cases of fraud the whole transaction is undone, but if a partially valuable consideration is given, its return is secured as the condition on which equity relieves."

I am of opinion, therefore, that under the circumstances of this case, the complainant has an equity to have his stock returned to him, upon his paying to the Savage Manufacturing Company the amount of his indebtedness to it, as ascertained by the last report of the Auditor.

The counsel, therefore, may prepare a decree ratifying and confirming the Report of the 12th of November last, and directing the defendant to issue to the complainant, of the capital stock of the said Manufacturing Company an interest representing the sum of $9,632 32, provided the said complainant shall, by a certain day to be limited by and named in the decree, pay or tender to the defendant the sum ascertained by the said report to be due from the said complainant to the defendant. And in that case neither party shall recover costs against the other. And by the decree power must be reserved to the Court to pass such further order or decree as may be necessary, in case the complainant shall make default in paying or tendering to the defendant the amount ascertained as aforesaid to be due to the defendant by the said Report.

———

ALEXANDER, for Complainant.

WILLIAM SCHLEY, and GEORGE H. WILLIAMS, for Defendant.